(No. 12410.—Reversed in part and remanded.)

CATHERINE CHRISTENE BULLARD, Appellant, *vs.* HENRY P. SUEDMEIER *et al.* Appellees.

*Opinion filed February 18, 1920.*

1. DEEDS—*what constitutes complete delivery of deed in escrow.* Where a grantor delivers a deed to a third person to be delivered to the grantee upon the death of the grantor, and surrenders all control over the deed and any right to reclaim it, the delivery is complete, and the deed takes effect, nòt at the death of the grantor but immediately upon delivery to the third person.

2. SAME—*when deeds are not testamentary in character.* Deeds which contain a provision that they shall not take effect during the lifetime of the grantor and of his wife are not testamentary in character if delivered, but they operate as present conveyances of remainders after the death of the grantor and his wife and require no intermediate estate to support the remainders.

3. SAME—*difference between an exception and a reservation in a deed.* An exception in a deed withholds from its operation some part or parcel of the thing which but for the exception would pass by the general description to the grantee, but a reservation is the creation of some new right issuing out of the thing granted and which did not exist before as an independent right in behalf of the grantor and not of a stranger.

4. SAME—*effect of a provision that deeds shall not take effect during lifetime of grantor and his wife.* Where a grantor divides his property by deeds to each of his children, each deed containing a provision that the conveyance shall not take effect during the lifetime of the grantor and of his wife, and delivers the deeds to a third person with directions to deliver them at the grantor's death to the respective grantees, the grantor has an estate for his own life and the life of his wife or an estate *pur autre vie,* but his wife has no life estate, and where she survives him the grantor dies intestate as to the estate *pur autre vie.*

5. SAME—*statutes of descent do not change character of an estate as fixed by common law.* The rules governing the descent and devise of property are statutory, but the statutes have not changed the rules of the common law as to the quality or character of property nor made that an estate of inheritance which before was not.

6. SAME—*estate pur autre vie is not an estate of inheritance and wife has no dower therein.* Where the effect of provisions in deeds

to the grantor's children is that there remains in the grantor an estate for his own life and that of his wife, the grantor's estate for the life of his wife is an estate *pur autre vie* and is not an estate of inheritance in which his widow would be entitled to dower.

7. SAME—*common law rule as to disposition of estate pur autre vie before death of cestui que vie is not recognized.* The doctrine of the common law that the property in which there is an estate *pur autre vie* is a mere derelict, belonging to no one after the death of the tenant *pur autre vie* and before the death of the *cestui que vie,* has never been recognized in Illinois.

8. SAME—*when the estate pur autre vie must be administered as intestate personal property.* Where a grantor, after dividing his property by deeds to each of his children, continues to hold an estate for his own life and for the life of his wife, the estate *pur autre vie* or for the life of the wife where she survives the grantor becomes intestate property, and as it is not an estate of inheritance it is not subject to partition among the heirs and must be administered and distributed as intestate personal property.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

BEACH & TRAPP, for appellant.

JAMES E. MILLER, and C. EVERETT SMITH, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On September 5, 1913, Christian Suedmeier was the owner of 400 acres of farm land, a timber lot and two city lots in Mt. Pulaski, all in Logan county. He had three sons and five daughters, all of whom were adults and married. He had formed a plan to divide the 400 acres among his children, and on that day he and his wife, Anna Margarete Suedmeier, executed eight statutory warranty deeds, conveying to each of his children except his daughter Catherine Christene Bullard a remainder in 50 acres in fee simple and conveying to her a life estate with remainder to her brothers and sisters. Each deed contained this provi-

291—26

sion: "This conveyance shall not take effect during the lifetime of the grantors, Christian Suedmeier and Anna Margarete Suedmeier." Suedmeier delivered the deeds to his attorney, George J. Smith, and directed him to deliver them at his death to the respective grantees. Smith put the deeds in an envelope, on which he wrote, "These deeds are to be held until after the death of Christian Suedmeier, when the enclosed deeds are to be delivered to the respective grantees named in the respective deeds." He placed this envelope in a large manila envelope, on which was written, "Hold for safe keeping," and after keeping the deeds for a time in his safe he placed them in a bank for safe keeping. Suedmeier died on February 11, 1917, and thereupon Smith delivered the deeds to the respective grantees. Suedmeier was survived by his widow, Anna Margarete, and his eight children, who were his heirs-at-law. Appellant, Catherine Christene Bullard, and three of her sisters, Wilhelmina Magdalena Schafer, Eva Catherine Cloves and Mary Phillipena Vetter, as heirs-at-law, filed their bill in the circuit court of Logan county for the partition of the 400 acres and also the two city lots and the tract of timber land not included in the deeds, alleging that Christian Suedmeier died seized in fee of all said real estate, which had descended to his heirs-at-law; that the widow was entitled to a homestead in one of the city lots and dower in all the real estate. The defendants were the widow and other heirs-at-law. Wilhelmina Magdalena Schafer, Eva Catherine Cloves and Mary Phillipena Vetter withdrew as complainants and were made defendants by amendment of the bill. Answers were filed and the cause referred to the master in chancery to take and report the evidence. The master took the evidence and reported the same, and the chancellor, upon a hearing and consideration thereof, found that the deeds were delivered and took effect as conveyances but subject to the provision above quoted that they should not take effect during the lifetime of the

grantors, Christian Suedmeier and Anna Margarete Suedmeier; that the complainant was entitled to partition of the two city lots and the timber land, but that the heirs-at-law had no other right, title or interest in the 400 acres than that conveyed to them by the deeds, and that the widow was entitled to the use and occupation, rents and profits of the 400 acres during her lifetime. The decree awarded homestead to the widow in one of the city lots and dower in the land not described in the deeds and denied partition of the 400 acres. From that decree this appeal was prosecuted.

The appellant contends (1) that the deeds were void for want of delivery; (2) that because by their express terms they were not to take effect until after the death of both grantors they were testamentary in character and not executed according to the Statute of Wills; (3) that if the deeds were effective to pass title to the grantees there was no reservation in any of them to the widow, Anna Margarete Suedmeier, and that she is neither entitled to a life estate nor any other interest.

When a grantor makes a deed and places it in the hands of a third person to be delivered to the grantee upon the death of the grantor, and the grantor surrenders all control and dominion over the deed and retains no right to reclaim it, such act constitutes a complete and valid delivery, and the deed takes effect, not at the death of the grantor, but immediately upon being delivered to the third person. (*Bryan* v. *Wash,* 2 Gilm. 557; *Cline* v. *Jones,* 111 Ill. 563; *Shults* v. *Shults,* 159 id. 654; *Latimer* v. *Latimer,* 174 id. 418; *German-American Nat. Bank* v. *Martin,* 277 id. 629.) The delivery of the deeds by Christian Suedmeier was unconditional, and he surrendered all control and dominion over them and all right to reclaim them, with the evident intent that the deeds should be operative to convey titles to take effect in possession after the deaths of the grantor and his wife. The finding of the chancellor that the deeds were delivered is correct.

The provision fixing the time when the grantees were to come into the actual enjoyment and possession of their land did not make the deeds testamentary in character. (*Harshbarger* v. *Carroll,* 163 Ill. 636; *Bowler* v. *Bowler,* 176 id. 541; *Venters* v. *Wickens,* 224 id. 569; *White* v. *Willard,* 232 id. 464; *Hathaway* v. *Cook,* 258 id. 92; *Hudson* v. *Hudson,* 287 id. 286.) The deeds operated as present conveyances of remainders after the death of the grantor and his wife and required no intermediate estate to support the remainder. *Shackelton* v. *Sebree,* 86 Ill. 616; *Bowler* v. *Bowler, supra; Harshbarger* v. *Carroll, supra.*

Having disposed of the first and second propositions of counsel for the appellant, the remaining question is, what interest in the 400 acres passed at the death of Christian Suedmeier, and to whom? The provision of the deeds was that they should not take effect during the lifetime of the grantors, Christian Suedmeier and Anna Margarete Suedmeier. By that provision the estate which Christian Suedmeier then had remained in him during his natural life and a further estate during the life of his wife, if she should survive him. An exception in a deed withholds from its operation some part or parcel of the thing which but for the exception would pass by the general description to the grantee, but a reservation is the creation of some new right issuing out of the thing granted and which did not exist before as an independent right in behalf of the grantor and not of a stranger. (*Gould* v. *Howe,* 131 Ill. 490; Sheppard's Touchstone, 78.) Christian Suedmeier could not reserve something for his own life out of an estate which was not granted until after his death. It was implied in *Douglas* v. *West,* 140 Ill. 455, and stated as the law in *White* v. *Willard, supra,* that a grantor may reserve to himself and wife an estate during their natural lives, which will continue during the life of the survivor, and under that rule, if Christian Suedmeier had done so by express words his widow would have had a life estate

in the 400 acres of land after his death. He did not make such a reservation but merely provided that the deeds should not take effect during the lifetime of the grantors. Whatever estate was not conveyed by the grantor remained in him and no part of the title not conveyed to the grantees was reserved to the widow, so that he had an estate for his own life and the life of his wife, if she should survive him. He died seized of an estate *pur autre vie* or during the life of his widow and died intestate as to that estate. The respective rights of the widow and heirs-at-law depend upon the nature and qualities of that estate.

Our statute on dower provides that a wife shall be endowed of the third part of all the lands whereof the deceased husband was seized of an estate of inheritance at any time during the marriage, and if an estate *pur autre vie* is not an estate of inheritance a widow is not entitled to dower. At the common law the owner of an estate *pur autre vie* was entitled only so long as he lived to enjoy the property, and on his decease in the lifetime of the *cestui que vie* no one had any right to the property. It did not revert to the grantor because he had parted with all his interest as long as the *cestui que vie* should live. It did not belong to the grantee because he was dead, and it could not vest in his executors because executors could not succeed to a freehold. The courts therefore said that it belonged to nobody, and if it was not granted to heirs it could be seized and appropriated by the first person who could enter upon it as an occupant. In such a case he that first entered might lawfully retain possession as a general occupant as long as the *cestui que vie* lived. If the estate had been granted to a man and his heirs the heir might enter and hold possession, and in such a case he was called a special occupant, having a special right of occupation by the terms of the grant. The heir might take and hold possession, not as heir, but because he had a special, exclusive right of occupancy by the terms of the original grant during the

residue of the estate granted, and the estate was not an estate of inheritance but was the lowest species of freehold. (2 Blackstone's Com. 259; 4 Kent's Com. 26; Williams on Real Prop. 20; Sheppard's Touchstone, 108.)

Our statute adopted the common law, so far as applicable and of a general nature, prior to the fourth year of James the First, who came to the throne of England in 1603 and whose fourth year began on March 24, 1606. This was the state of the common law at that time although it has been changed to some extent in England. By the act of 29 Car. II (chap. 3) an estate *pur autre vie* was made devisable by will, and provided if it came to the heir as a special occupant it should be chargeable in his hands as assets by descent, and if there was no special occupant it should go to the executors or administrators and should be assets in their hands. By the act of 14 Geo. II (chap. 20) it was provided that if there was no special occupant and no devise the estate should go, be applied and distributed in the same manner as the personal estate of the testator or intestate. The subject is now regulated in many of the States of this country by statute, (3 Washburn on Real Prop.—6th ed.—66,) but there is no statute of this State changing the character of the estate. The rule of the common law upon the subject of dower in estates *pur autre vie* was recognized and applied in New York in the case of *Gillis* v. *Brown,* 5 Cow. 388. The court held that the estate did not descend to heirs but came to the heir as special occupant, although there were statutes in New York similar to the English. The same rule was held in Mississippi, where a widow conveyed her dower and her grantee had an estate for her life. (*Fisher* v. *Grimes,* 1 S. & M. Ch. 107.) The laws governing the descent and devise of property are statutory, (*Kochersperger* v. *Drake,* 167 Ill. 122,) but while they fix the course of descent the statutes have not changed the rules of law as to the quality or character of property or made that an estate of inheritance which before was not.

The estate *pur autre vie* of which Christian Suedmeier was seized was not an estate of inheritance and his widow is not entitled to dower. The estate not being one of inheritance did not descend to heirs-at-law, and the doctrine of the common law that the property in which one had an estate *pur autre vie* is a mere derelict, belonging to no one, which could be seized and appropriated by the first one who could get possession, has never been recognized in this State and from the inevitable and natural consequences must be held not applicable here.

Summing up the situation: The estate of which Christian Suedmeier died seized was not an estate of inheritance at common law or by any statute, so that the widow can not have dower; not being an estate of inheritance it did not pass to heirs and the appellant is not entitled to partition; and the rule of the common law that it became a derelict, without an owner, and to be seized and appropriated by the first one who could get possession, being contrary to public policy and productive of evil consequences, is not applicable in this State but it is intestate property of value and to be administered as such. It is therefore personal property, to be distributed under the statute providing for the descent of estates, both real and personal, of deceased owners whose estates are intestate. After the payment of debts the right of the widow is to one-third and the remainder to be divided among the children.

The decree of the circuit court is affirmed except as to the 400 acres of land described in the deeds and as to the denial of partition of the lands so described and is reversed as to the finding that Anna Margarete Suedmeier is entitled to the use and occupation, rents and profits of the 400 acres during her lifetime, and the cause is remanded to the circuit court.

*Reversed in part and remanded.*